UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-00190-CAS-JPRx | Date | July 15, 2019 |
| Title | UNITED STATES V. $23,100 IN U.S. CURRENCY | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Brent Whittlesey, AUSA  Not Present

**Proceedings:** MOTION FOR DEFAULT JUDGMENT AGAINST THE INTERESTS OF WEIPENG YAN, NIEVES ZEFERINA BRAVO, AND ALL OTHER POTENTIAL CLAIMANTS (Dkt. [ 19 ], filed on June 13, 2019)

## I. INTRODUCTION

On January 9, 2019, plaintiff, the United States of America (the "government") initiated this civil forfeiture action by filing a verified complaint against defendant $23,100.00 in U.S. currency (the "defendant currency"), pursuant to 21 U.S.C. § 881(a)(6). Dkt. 1. On March 25, 2019, the government filed the operative amended complaint. Dkt. 9 ("Compl."). On June 10, 2019, the Clerk of the Court entered default against the interests of Weipeng Yan ("Yan"), Nieves Zeferina Bravo ("Bravo"), and all other potential claimants to the defendant currency. Dkt. 15; Dkt. 17. On June 13, 2019, the government filed the instant motion for default judgment. Dkt. 19 ("Mot."). The motion is unopposed.

The Court held a hearing on July 15, 2019. No potential claimants to the defendant currency appeared. Having carefully reviewed the motion, and the government's supporting declaration and exhibits, the Court finds and concludes as follows.

## II. BACKGROUND

On July 18, 2018, while conducting surveillance as part of a drug trafficking investigation at the residence of Meiyan Chen ("Chen"), officers observed an unknown male approach the residence in a Chevrolet Malibu and exit the vehicle carrying a large, white, and weighted grocery bag. Compl. ¶ 8. The driver gave the bag to an individual later identified as Hongwu Zhan ("Zhan"), who had been standing in Chen's driveway. Id. The driver then returned to his car and drove away. Id. Zhan briefly entered the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-00190-CAS-JPRx | Date | July 15, 2019 |
| Title | UNITED STATES V. $23,100 IN U.S. CURRENCY | | |

residence, then re-emerged, still holding the bag. Id. Officers report that he then "looked in all directions as if he was checking for the presence of law enforcement," id., and then walked to meet an individual later identified as Weipeng Yan ("Yan"), who had just arrived at the residence in a Ford Mustang, id. ¶ 9. Zhan gave the white bag to Yan, who drove away. Id.

Moments later, another group of officers initiated a traffic stop after observing Yan commit unspecified California Vehicle Code violations. Compl. ¶ 10. Officers observed the white bag sitting under Yan's driver's seat and examined its contents. Id. Inside, they found bundled, rubber-banded currency in denominations of 103 one-hundred dollar bills, 36 fifty-dollar bills, and 550 twenty-dollar bills. Id. ¶¶ 11, 14. When asked by the officers, Yan estimated that the cash totaled $1,000 in profits. Id. ¶ 12. In fact, the cash totaled $23,100.00. Id. ¶ 14.

Yan also told officers he had retrieved the funds from a friend at a location that they noted was near the Chen residence address, and that the money constituted profits "from selling shoes." Id. ¶ 12. However, Yan produced no documentation to support this claim. Id. Highway patrol officers relayed this information to the officers who continued to surveil the Chen residence, and those officers confronted Chen, questioning her about the cash discovered in Yan's vehicle. Id. ¶ 14. Chen also reported that it was money she had made while selling shoes for Yan. Id. Officers also returned to the Chen house with Yan, who they continued to question about the seized funds. Id. According to the government, Yan then provided them with "various [conflicting] accounts of how much money was in the bag, how he had obtained it, and to whom it belonged." Id.

The government does not specify whether anyone was arrested as a result of this seizure, or if this seizure led to further investigation of the persons involved. However, on about September 11, 2018, Chen and Zhan submitted claims to the defendant currency in an administrative forfeiture proceeding, held by the Drug Enforcement Agency ("DEA"), seeking the return of the cash and asserting that the funds "constituted savings generated by Chen and her husband." Id. ¶15. The government does not specify the results of this hearing. However, on June 6, 2019, Chen and Zhan, through their counsel, entered into a Consent Judgment of Forfeiture ("consent judgment") with the government to settle the action relative to their own respective interests in the defendant currency. See Dkt. 16. As part of the consent judgment, the government agreed to return $3,465.00 to Chen and Zhan, id. ¶ 4, and Chen and Zhan waived their rights to contest the forfeiture of the remaining $19,635.00 of the defendant Currency, id. ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-00190-CAS-JPRx | Date | July 15, 2019 |
| Title | UNITED STATES V. $23,100 IN U.S. CURRENCY | | |

The government alleges that the remainder of the defendant currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it represents or is traceable to proceeds of illegal narcotics trafficking, or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 et seq. Id. ¶ 16.

### III. LEGAL STANDARDS

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, a court may order default judgment following the entry of default by the Clerk of Court. PepsiCo, Inc. v. California Security Cans., 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Upon entry of default, the factual allegations in the plaintiff's complaint, except those relating to damages, are deemed admitted. Id. at 1175. Although the court has discretion to grant or deny a motion for default judgment, id. at 1174, the Ninth Circuit has directed that courts consider the following factors (collectively, the Eitel factors) in exercising this discretion: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong policy favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### IV. DISCUSSION

In its motion for default judgment, the government indicates that the procedural requirements governing civil forfeiture and default judgment have been satisfied in this case and argues that the Eitel factors weigh heavily in support of entering default judgment. Mot. at 6–8. The Court addresses both the relevant procedural rules and the application of the Eitel factors below.

#### A. Procedural Requirements

Any property subject to forfeiture to the United States may be seized in the manner set forth in 18 U.S.C. § 981(b). See 21 U.S.C. § 881(b). Pursuant to 18 U.S.C. § 981(b)(2)(A), a seizure may be made without a warrant if a complaint for forfeiture has been filed in the U.S. District Court and the court issued an arrest warrant *in rem* pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. R."). Supplemental Rule G includes several judicial authorization, process, and notice requirements. The government must file a verified complaint that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-00190-CAS-JPRx | Date | July 15, 2019 |
| Title | UNITED STATES V. $23,100 IN U.S. CURRENCY | | |

states the grounds for jurisdiction and venue, describes the property being forfeited with reasonable particularity, identifies the statute under which the forfeiture action is brought, and states sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. Supp. R. G(2)(a)–(f). The clerk must then issue a warrant to arrest the property if it is in the government's possession, custody, or control, and process must be executed on the property. Supp. R. G(3)(b)–(c). The government is required to give notice to potential claimants by publication and by sending direct notice of the pending forfeiture action to any person who reasonably appears to be a potential claimant. Supp. R. G(4)(a)–(b). Local Admiralty Rule C.4(a) also requires notice by publication and direct notice by first-class mail to persons known to have an interest in the property.

The Court finds that the government has satisfied the requirements of 18 U.S.C. § 981(b)(2)(A), Supplemental Rule G, and Local Admiralty Rule C.4(a)—although the Court requests oral argument on the involvement of Nieves Zeferina Bravo ("Bravo"), who was notified in this matter, but never identified in the complaint. First, as mandated by Supplemental Rule G(2), the government filed a verified complaint on March 15, 2019, which states the grounds for jurisdiction and venue, describes the property being forfeited with reasonable particularity, identifies the statute under which the forfeiture action is brought, and includes sufficient factual detail to support a reasonable belief that the government will be able to meet its burden of proof at trial. In accordance with Supplement Rule G(3), on March 18, 2019, the Clerk then issued an arrest warrant *in rem* for the defendant currency. Dkt. 11. On March 20, 2019, process was executed upon the defendant currency by the U.S. Marshals Service. Dkt. 14. As required by Supplemental Rule G(4)(a), the government posted notice of the forfeiture on an official government website (www.forfeiture.gov) for at least 30 consecutive days starting on March 19, 2019. See Dkt. 15-3. Pursuant to Supplemental Rule G(4)(b), on March 21, 2019, the government also sent notice, by certified mail, return receipt requested, to Yan, at his last known address in Pasadena, California. On March 19, 2019, the government sent the same notice to Bravo, at his last known address in Los Angeles, California. Dkt. 19, Ex. D- E. At oral argument, the government clarified that it provided notice to Bravo because, although Bravo was not present at the scene when the defendant currency was recovered, Bravo was the registered owner of the Chevrolet Malibu which Zhan drove. The notices were sent with a claim letter describing the defendant currency and giving notice as to the time within which a claim and answer were required to be filed as provided by the Local Rules. See Supp. R. G(4)(b)(ii). The letters were delivered and received. Id.; see Supp. R. G(4)(b)(iii) ("Notice may be sent to the potential claimant or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-00190-CAS-JPRx | Date | July 15, 2019 |
| Title | UNITED STATES V. $23,100 IN U.S. CURRENCY | | |

to the attorney representing the potential claimant."). Under 18 U.S.C. § 983(a)(4) and Supplemental Rule G(5), the time for filing a statement of interest expired after 30 days, and the time for filing an answer has expired. Dkt. 19-1, Declaration of Brent A. Whittlesey ("Whittlesey Decl.") ¶ 9. While Zhan and Chen entered into the consent judgment, no claim to defendant currency or answer to the First Amended Complaint for Forfeiture has been filed by anyone in this action. Id. ¶ 10.

In addition, Local Rule 55–1 requires that an application for default judgment be accompanied by a declaration (1) indicating when and against what party default has been entered; (2) identifying the pleading as to which default has been entered; (3) indicating whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) stating that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (5) affirming that notice has been served on the defaulting party if required by Rule 55(b)(2). C.D. Cal. L.R. 55–1. Assistant U.S. Attorney Brent A. Whittlesey submitted a declaration indicating that default was entered against the interests of Yan and Bravo, and all unknown potential claimants on June 7, 2019. See Whittlesey Decl. Thus, the Court finds that the government also has satisfied these requirements. The declaration also states, on information and belief, that potential claimants are neither minors nor incompetent and do not serve in the military therefore the Servicemembers Civil Relief Act does not apply. Id. ¶¶ 10–11. On June 13, 2019, a copy of the instant motion for default judgment was served on Yan and Bravo at their last known addresses. Dkt. 19-8. See C.D. Cal. L.R. 55–1.

In sum, the court is satisfied with the government's notice to Yan in adherence to 18 U.S.C. § 981(b)(2)(A), Supplemental Rule G, Local Admiralty Rule C.4(a), and Local Rule 55–1, as it is clear from the government's declaration that Yan has an interest in defendant currency. In light of the fact that Bravo owned the vehicle that Zhan drove, his interest is also now clear.

      **B.**     **Application of the <u>Eitel</u> Factors**

          **1.**     **Risk of Prejudice to Plaintiff**

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); see also Eitel, 782 F.2d at 1471–72. The government contends that, to date, no one has responded to its seizure of defendant currency by way of filing a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:19-cv-00190-CAS-JPRx | Date | July 15, 2019 |
|---|---|---|---|
| Title | UNITED STATES V. $23,100 IN U.S. CURRENCY | | |

claim for the money or an answer to the First Amended Complaint for Forfeiture. Mot. at 5. Accordingly, absent the court entering default, the government "would be forced to continue litigation even though no party has filed an answer or a claim," and thus the first Eitel factor weighs in favor of entering default judgment. United States v. Approximately $194,752 in U.S. Currency, No. 11-CV–1400-EMC, 2011 WL 3652509, *3 (N.D. Cal. Aug. 19, 2011).

### 2. Sufficiency of the Complaint and the Likelihood of Success on the Merits

Courts often consider the second and third Eitel factors together. See PepsiCo, 238 F. Supp. 2d at 1175; HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 941 (D. Ariz. 2013). The second and third Eitel factors assess the substantive merits of the movant's claims and the sufficiency of its pleadings, which "require that a [movant] state a claim on which [it] may recover." PepsiCo, 238 F. Supp. 2d at 1177 (quotation marks omitted); see also Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that the issue is whether the allegations in the pleading state a claim upon which plaintiff can recover).

To prevail in an action under 21 U.S.C. § 881(a)(6), the government must prove by a preponderance of the evidence that the property was (1) furnished or intended to be furnished in exchange for a controlled substance; (2) traceable to such an exchange; or (3) used or intended to be used to facilitate a violation of federal drug laws. United States v. $80,180 in U.S. Currency, 303 F.3d 1182 (9th Cir. 2002) (explaining that the Civil Asset Reform Act of 2000 ("CAFRA") required the government to prove a property's ties to illicit transaction by a preponderance of the evidence, instead of merely requiring the government to demonstrate probable cause). When the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, it must also establish a substantial connection between the property and the offense. 18 U.S.C. § 983(c)(3). "The determination whether the government has met its burden of proof is based on the aggregate of the facts, including circumstantial evidence." United States v. $49,790 in U.S. Currency, 763 F. Supp. 2d 1160, 1166 (N. D. Cal. 2010) (citing United States v. $42,500 in U.S. Currency, 283 F.3d 977, 980 (9th Cir. 2002)).

Numerous facts in this case indicate that the defendant currency was used to commit or facilitate the commission of a criminal offense. First, Yan and Chen offered conflicting statements regarding how the money came into their possession, which supports the inference that it was drug-related. See United States v. $215,300 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-00190-CAS-JPRx | Date | July 15, 2019 |
| Title | UNITED STATES V. $23,100 IN U.S. CURRENCY | | |

Currency, 882 F.2d 417, 419 (9th Cir. 1989) (attempts to avoid detection by concealing or lying about the money supported an inference that the money was drug-related). Second, the amount of cash Yan was carrying was substantial, which also supports the inference that it was was drug-related. $42,500.00 in U.S. Currency, 283 F.3d at 981 (citing U.S. v. $93,685.61 in U.S. Currency, 730 F.2d 571, 572 (9th Cir. 1984)) (holding that a large amount of cash is "strong evidence that the money was furnished or intended to be furnished in return for drugs."). Third, as the government argues, the money was bundled and rubber-banded, and bore the "additional narcotic trafficking indicia" by being in "denominations that are consistent with narcotic trafficking." Whittlesey Decl. ¶ 14. Fourth, Yan was unaware of the amount of money he was carrying, and the government contends that "narcotic couriers often do not know how much money they are carrying[.]" Id. Finally, law enforcement saw the defendant currency exchange hands outside of Chen's residence, as the government surveilled the property as part of a drug trafficking investigation. Whittlesey Decl. ¶ 12.

Accordingly, the weight of the allegations supports the conclusion that the money was drug-related, and thus this factor also favors the granting of the default judgment.

### 3. Sum of Money at Stake in the Action

The Court balances "the amount of money at stake in relation to the seriousness of the conduct." PepsiCo, 238 F. Supp. 2d at 1176; Eitel, 782 F.2d at 1471–72; see also Walters v. Statewide Concrete Barrier, Inc., No. 3:04–cv–02559–JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted."). Here, the amount of money is substantial—amounting to $19,635.00. Still, it appears that this amount is tailored to the specific misconduct alleged in the complaint, which demonstrates that this factor weighs in favor of granting the default judgement. Eitel, 782 F.2d at 1472.

### 4. The Possibility of a Dispute Concerning Material Facts

The fourth Eitel factor considers the possibility that material facts are disputed. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, 238 F. Supp. 2d at 1177. Because no claim or answer has been filed in response to the instant First Amended Complaint, all allegations in the complaint stand uncontested and therefore must be accepted as true for the purposes of default judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-00190-CAS-JPRx | Date | July 15, 2019 |
| Title | UNITED STATES V. $23,100 IN U.S. CURRENCY | | |

Accordingly, there is no possibility of a dispute concerning material facts, and this factor weighs in favor of granting default.

### 5. Possibility of Excusable Neglect

The fifth Eitel factor considers whether default may have been the product of excusable neglect. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72. There is no indication that default was the result of excusable neglect because the government fully complied with the notice provisions of the Local Rules and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Thus, this factor weighs in favor of granting default judgment.

### 6. Policy Favoring Decisions on the Merits

Finally, although the Court should decide cases on the merits whenever possible, Eitel, 782 F.2d at 1472, the failure of Yan, Bravo, or any other potential claimant to file an answer "makes a decision on the merits impractical, if not impossible." PepsiCo, 238 F. Supp. 2d at 1177. Therefore, this factor does not preclude the entry of default judgment.

\* \* \* \*

In sum, apart from the policy favoring decisions on the merits and the possibility of excusable neglect, the Court concludes all of the remaining Eitel factors weigh in favor of default judgment, including the merits of plaintiff's claims. See Federal Nat. Mortg. Ass'n v. George, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958, *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important Eitel factors.") (citation omitted). Therefore, considering the procedural requirements which the government satisfied, and weighing all of the Eitel factors, the Court finds that entry of default judgment of forfeiture is appropriate.

//

//

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:19-cv-00190-CAS-JPRx | Date | July 15, 2019 |
| Title | UNITED STATES V. $23,100 IN U.S. CURRENCY | | |

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the government's motion for default judgment of forfeiture. The remaining $19,635.00 of the defendant Currency is hereby forfeited to the United States of America, pursuant to § 881(a)(6). All right, title and interest in the defendant currency is vested in the United States. The Clerk is instructed to enter judgment in favor of the United States, which shall dispose of the defendant currency in the manner required by law.

**IT IS SO ORDERED**.

|  | 00 | : | 04 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |